

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Harvey Ellis Eisenberg*
*Assistant United States Attorney*
*Chief, National Security Section*
*Coordinator, Anti-Terrorism Advisory Council*
*Harvey.Eisenberg@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4843*
*MAIN: 410-209-4800*
*FAX: 410-962-9293*

December 22, 2017

Honorable Marvin J. Garbis
United States District Judge
United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201

    Re:    <u>United States v. Harold T. Martin, III, MJG-17-0069</u>

Dear Judge Garbis:

    In light of the defendant's decision to plead guilty to Count One of the indictment filed in the above-referenced case without the benefit of a plea agreement, this letter sets forth, as applicable, the penalties for the offense to which the defendant seeks to plead guilty. It also addresses a number of matters that the government submits will be relevant to the Court's Rule 11 colloquy, including an agreement between the parties regarding deferred sentencing.

### Offense of Conviction

    1.    Count One of the indictment charges the defendant with Willful Retention of National Defense Information, in violation of Title 18, United States Code, Section 793(e).

### Elements of the Offense

    2.    The elements of the offense to which the government has been informed that the defendant intends to plead guilty, and which the government would prove beyond a reasonable doubt if the case went to trial, are as follows:

    a. The defendant had unauthorized possession of Document A listed in the indictment;

    b. Document A contained information that related to the national defense; and

    c. The defendant willfully retained Document A and failed to deliver it to the officer or employee of the United States entitled to receive them.

### Penalties

    3.    The maximum penalty for the offense charged in Count One is not more than ten

(10) years' imprisonment, followed by a term of supervised release of not more than three (3) years and a fine of up to $250,000.

4. In addition, the defendant must pay $100 as a special assessment pursuant to Title 18, United States Code, Section 3013, which will be due and should be paid at or before the time of sentencing. The Court may also order the defendant to make restitution pursuant to Title 18, United States Code, Sections 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to Title 18, United States Code, Section 3572(d), the Court orders otherwise. Further, the government respectfully submits that the Court should advise the defendant that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of supervised release imposed by the Court, his supervised release could be revoked—even on the last day of the term—and he could be returned to custody to serve another period of incarceration and a new term of supervised release. The government also submits that the defendant should be advised that the Bureau of Prisons has sole discretion in designating the institution at which he will serve any term of imprisonment imposed.

## Waiver of Rights

5. The government submits that by pleading guilty, the defendant surrenders certain rights as outlined below:

    a. If the defendant had persisted in a plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the defendant, this Office, and the Court all agreed.

    b. If the defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before he could be found guilty of any count. The jury would be instructed that he was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the defendant went to trial, the government would have the burden of proving him guilty beyond a reasonable doubt. The defendant would have the right to confront and cross-examine the government's witnesses. The defendant would not have to present any defense witnesses or evidence whatsoever. If the defendant wanted to call witnesses, however, he would have the subpoena power of the Court to compel the witnesses to attend.

    d. The defendant would have the right to testify if he so chose, and he would have the right to refuse to testify. If the defendant chose not to testify, the Court would instruct the jury that they could not draw any adverse inference from his decision not to testify.

    e. If the defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the defendant knowingly gives up the right to appeal the verdict and the Court's

decisions. A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and therefore, by pleading guilty, the Defendant waives all non-jurisdictional defects in the proceedings conducted prior to entry of the plea.

        f. By pleading guilty, the defendant will be giving up all of these rights. By pleading guilty, the defendant may have to answer the Court's questions both about the rights he is giving up and about the facts of his case as well as his complete satisfaction with the advice and counsel of his attorneys.

        g. If the Court accepts the defendant's plea of guilty as to Count One, there will be no further trial or proceeding of any kind with respect to Count One, and the Court will find him guilty of Count One. The remaining 19 counts of the indictment will still be pending against the defendant and should be set for trial in the ordinary course.

        h. By pleading guilty, the defendant will also be giving up certain valuable civil rights and also may be subject to deportation or other loss of immigration status. If he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including defense counsel or the Court, can predict with certainty the effect of a conviction on immigration status.

## Advisory Sentencing Guidelines Apply

      6.    The Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at Title 18, United States Code, Sections 3551-3742 (excepting Title 18, United States Code, Sections 3553(b)(1) and 3742(e)) and Title 28, United States Code, Sections 991 through 998. The Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual Statement and Advisory Guidelines Application

      7.    Pursuant to his guilty plea, the defendant has no assurance as to the guidelines applicable to the case. At trial, the government would prove beyond a reasonable doubt the factual allegations contained in Attachment A, and will provide the Court with substantiation for the following applicable sentencing guidelines factors:

        a.    **Base Offense Level:** The base offense level is twenty-nine (29) pursuant to U.S.S.G. § 2M3.3(a)(1) because the defendant willfully retained national defense information that was classified at the TOP SECRET//SCI level.

        b.    **Abuse of Position of Public Trust:** Pursuant to U.S.S.G. § 3B1.3, there is a two (2)-level increase because the defendant abused a position of public trust in a manner that significantly facilitated the commission and concealment of the offense.

  c. **Potential Grouping Adjustment:** Pursuant to U.S.S.G. § 3D1.2, the other 19 counts of the Indictment will not group with the conviction for Count One. Thus, there may be an increase of as many as five (5) levels to the highest offense level, pursuant to U.S.S.G. §3D1.4.

  d. **Combined Adjusted Offense Level:** Thus, the combined adjusted offense level is expected to be between thirty-one (31) and thirty-six (36), depending on any grouping adjustment.

  8. **No Reduction for Acceptance of Responsibility:** The government opposes any reduction in the defendant's combined adjusted offense level, pursuant to U.S.S.G. § 3E1.1, because by electing to enter a plea of guilty as to only one of the pending counts, without any agreement as to disposition of the other counts, the defendant has failed to make full recognition and affirmative acceptance of personal responsibility for his overall criminal conduct.

  9. Thus, the final offense level will be between **thirty-one (31)** and **thirty-six (36)**.

## Other Pertinent Matters

  10. **Sentencing to be Deferred Until Disposition of All Pending Charges:** The government and the defendant agree that sentencing on Count One should not occur until all pending counts are resolved. The government's non-objection to the Court accepting the defendant's partial plea is expressly conditioned upon the defendant's agreement to defer sentencing on Count One until all pending counts are resolved.

  11. **Admission of Guilty Plea and Related Statements at Trial:** The government respectfully submits that it will be entitled to use the defendant's plea of guilty to Count One and any related statements in its case-in-chief during trial on the remaining counts of the indictment. Rule 410 of the Federal Rules of Evidence, by its express terms, will not preclude the use at trial of the guilty plea and statements made during the proceeding on the plea under Rule 11 of the Federal Rules of Criminal Procedure.

  12. **Effect on Evidence at Trial:** The government respectfully submits that the defendant's guilty plea does not preclude the government's use at the defendant's trial on the remaining 19 counts of the indictment any evidence that would otherwise have been admissible at trial for the entire indictment.

  13. **Potential for Consecutive Sentencing:** The government respectfully submits that, should the defendant be convicted on any other pending counts of the indictment, the Court shall be entitled to impose either a consecutive or a concurrent sentence as to each count of conviction, in whole or in part.

  14. **No Limitation on Information Presented for Sentencing:** The government respectfully submits that the parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the defendant's background, character, and conduct, as well as the impact of his conduct on the U.S. Government and its intelligence agencies, including but not limited to the specific harms caused not only by the unlawful retention of the documents referenced in the indictment, but also by the

government's expenditure and diversion of resources to investigate the totality of information the defendant retained without authorization.

15. **Lifetime Obligation to Protect Classified and National Defense Information:** Pursuant to Title 18, United States Code, Sections 793, 794, 798, as well as other statutes and multiple nondisclosure agreements between the United States Government and the defendant, the defendant has a continuing legal obligation to refrain from the unauthorized oral or written disclosure of classified information, or information relating to the national defense. Under the laws of the United States and his agreements with the United States government, the defendant must not disclose, communicate, transmit, or disseminate in any way any classified information, or information relating to the national defense. The law absolutely forbids him from disclosing, communicating, transmitting, or disseminating any classified information, or information relating to the national defense, without regard to where, when, or how he learned of or came into possession of the classified information, or information relating to the national defense. The defendant is absolutely prohibited from disclosing, communicating, transmitting, or disseminating any classified information, or information relating to the national defense, even if that information can be found in a book, on the Internet, or in any other source whether publicly available or not. Merely because classified information, or information relating to the national defense, may have appeared publicly does not render that information unclassified. Under the law and his nondisclosure agreements, the defendant is prohibited from confirming or expanding upon classification status, technical accuracy, or potential uses for any classified information, including national defense information, that may appear in any public or non-public source.

16. **Pre-Publication Review:** Pursuant to his multiple nondisclosure agreements with the United States Government, the defendant shall not collaborate on, consult about, or otherwise assist or be involved with any communication of information relating to classified subject areas to which he was exposed while working as a contractor for the United States Government with any other person, without first obtaining the express written permission of all relevant agencies or components of the United States Government. This prohibition includes, but is not limited to, any interviews of the defendant, or anyone representing or acting on his behalf, by the media or others. This prohibition also includes any documents, computer code or other information created by the defendant in whole or in part, and any other papers, books, writings, electronic communications, articles, films or other productions relating to him or his work as a contractor for the United States Government, or the events leading to his conviction(s).

17. **Use and Disclosure of Unclassified Protected Information and Materials:** Pursuant to the Protective Order entered by the Court, Dkt. #50, the materials designated "protected" by the Government may only be used for purposes of the current litigation, and may only be disclosed to non-parties to the litigation as needed for the litigation, and only if the non-party signs the order of acknowledgement attached to the Court's order.

18. **Disposition of Classified Information:** Pursuant to the Protective Order Pertaining to Classified Information entered by the Court, Dkt. #55, all classified documents and information to which the defense has been given access in this case remain the property of the United States. Upon demand of the Classified Information Security Officer (CISO) all persons shall return to the CISO all classified information in their possession obtained through discovery from the government in this case, or for which they are responsible because of access to classified

information. The notes, summaries and other documents prepared by the defense that do or may contain classified information shall remain at all times in the custody of the CISO for the duration of the case. At the conclusion of the case, all such notes, summaries, and other documents are to be destroyed by the CISO in the presence of counsel for the defendant if they choose to be present.

19. **Disposition of Firearms:** As a result of his guilty plea, the defendant will be prohibited from possessing firearms pursuant to Title 18, United States Code, Section 922(g)(1). As such, the government has agreed to return the firearms seized by investigators on August 27, 2016, to a person who is not prohibited from possessing firearms.

20. **Forfeiture:** As a result of his guilty plea, the defendant's interest in all property, real or personal, which constitutes or is derived from proceeds traceable to the offense shall be forfeited to the United States of America. This includes all digital media and devices seized by investigators on August 27 and 31, 2016.

21. **Waiver of Appeal**: By pleading guilty, the defendant knowingly waives all rights, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal his conviction.

22. **No Plea Agreement:** There is no plea agreement in this case, and there are no other agreements, promises, undertakings, or understandings between the defendant and this Office.

Very truly yours,

Stephen M. Schenning
Acting United States Attorney

_____/s/_____
Harvey E. Eisenberg
Assistant United States Attorney
Chief, National Security Section

_____/s/_____
Zachary A. Myers
Assistant United States Attorney

_____/s/_____
Nicolas A. Mitchell
Assistant United States Attorney

_____/s/_____
David Aaron
Trial Attorney
U.S. Department of Justice
National Security Division

# ATTACHMENT A
# GOVERNMENT'S FACTUAL STATEMENT

*If this case had proceeded to trial on Count One of the Indictment, the government would have proven the following beyond a reasonable doubt. These facts do not encompass all of the evidence that would be presented at trial as to this Count nor does it encompass all of the evidence that will be presented at trial on the 19 pending counts.*

### The Defendant's Background and Employment

The Defendant, Harold T. Martin, III, 52, is a former resident of Glen Burnie, Maryland. From July 1988 through July 1992, Martin served on active duty in the United States Navy. Martin held a SECRET security clearance in connection with his active duty service. From August 1992 through March 2000, Martin served in the United States Naval Reserve. In August 1994, Martin's security clearance in connection with his Navy service was upgraded to TOP SECRET.

Beginning in December 1993, and continuing until August 29, 2016, Martin was employed by at least seven different private companies and was assigned as a contractor to components of the U.S. Department of Defense (DoD) and the United States Intelligence Community (USIC) (collectively, the "government agencies"). Martin was required to receive and maintain a security clearance in order to work at each of the government agencies to which he was assigned. As a private contractor, Martin held security clearances up to TOP SECRET//SENSITIVE COMPARTMENTED INFORMATION (SCI) at various times.

### The Defendant's Access to Classified Information

Martin's access to classified information was based in part upon his agreement to follow the laws, regulations, and government policies regarding the handling, marking, transportation, and storage of classified materials. Over his many years holding a security clearance, Martin signed numerous agreements with the U.S. Government agreeing to abide by these conditions. Martin regularly received training regarding classified information, including the definitions of classified information, the levels of classification, and SCI, as well as the proper handling, marking, transportation, and storage of classified materials. Martin received training on his duty to protect classified materials from unauthorized disclosure, which included complying with handling, transportation, and storage requirements. Martin knew that unauthorized removal of classified materials and transportation and storage of those materials in unauthorized locations risked disclosure of those materials, and therefore could endanger the national security of the United States and the safety of its citizens.

In particular, Martin was advised repeatedly that unauthorized disclosure of TOP SECRET information reasonably could be expected to cause exceptionally grave damage to the national security of the United States, and that violation of rules governing the handling of classified information could result in criminal prosecution. Training presentations and materials specifically warned Martin that he was prohibited from retaining classified information at his home or in his vehicle.

Classified information relating to the national defense is closely held and maintained under specific security conditions. Because of his work responsibilities and security clearance, Martin was able to access classified national defense information in secure locations and computer systems. Beginning in approximately the late 1990s, Martin stole from such secure locations classified paper and digital documents containing information relating to the national defense and retained those documents in his residence (including surrounding property), on his person, and in his vehicle.

## The Defendant's Willful Unlawful Retention of National Defense Information

Beginning in the late 1990s and continuing through August 31, 2016, Martin possessed in his residence and vehicle, both located in Glen Burnie, Maryland, a vast quantity of documents and other information bearing standard classification markings, in both hard copy and digital form (stored on multiple electronic storage media), that he stole from his workplaces.

On August 27, 2016, during the execution of search warrants at his home, Martin was not in custody, and voluntarily agreed to be interviewed by investigators. During the interview, Martin at first denied, and later, when confronted with specific documents, admitted he took documents and digital files from his workplaces to his residence and vehicle that he knew were classified. Martin stated that he knew he did not have authorization to retain the materials at his residence or in his vehicle. Martin stated that he knew what he had done was wrong and that he should not have done it because he knew it was unauthorized.

The documents and digital files Martin stole from his workplaces and retained without authorization at his residence spanned two decades, related to many subject matter areas, and included information from many U.S. government agencies. The large volume of hard-copy and digital materials included information from the National Security Agency (NSA). In particular, the classified documents Martin possessed included Document A, a March 2014 NSA leadership briefing outlining the development and future plans for a specific NSA organization.

Document A is classified and closely held by the government. The information contained within this document related to United States military and naval establishments and related activities of national preparedness, as well as the defense of the United States against its enemies. Possession of this information outside of authorized secure facilities and channels is potentially damaging to the United States and would be highly useful to its enemies.

Martin was aware that the documents he retained were classified and contained national defense information and that retaining them in his residence and vehicle put the information and national security at risk. Martin's residence and vehicle were not locations authorized to store classified information. Martin knew that they were not authorized locations for such storage and, having unauthorized possession of the document listed above relating to the national defense, willfully retained the document and failed to deliver it to an officer or employee of the United States entitled to receive it.