1    that process I urge you to return to this room and tell the

2    defendant that he is guilty on all 4 counts.  Thank you.

3          THE COURT:  Members of the jury, I am going to be

4    about half an hour.   Does anybody want to take a brief

5    recess before I begin?  You do?  Anybody want to take a brief

6    recess?  Okay.  Just about 5 minutes.  Hurry back please.

7    Don't discuss the case.

8                      JURY NOT PRESENT

9                          RECESS

10                       JURY PRESENT

11         THE COURT:  Members of the jury, first let me, as

12   counsel have already done, thank you for your attention that

13   you have given to counsel and the witnesses who have

14   testified during the trial of this case, also to thank you

15   for your understanding and patience when we have had certain

16   delays that have occurred during the course of the

17   proceedings.  I thank you for all of this.

18         As you may already know, the functions of a judge and a

19   jury in a case such as this are quite different.  It is my

20   duty as judge to instruct you on the law that applies to the

21   case.  It is your duty as jurors to decide the facts of the

22   case. In doing so you must apply the law as I state it to you

23   without regard to what you think the law is or what you think

24   it should be.  In deciding the facts and the issues of fact

25   you must decide them without prejudice or bias or sympathy.

1   You should not single out any certain individual sentence and

2   ignore the others.  Rather, you should consider all of the

3   instructions as a whole and regard each instruction in the

4   light of all the others.  As jurors, you and only you are the

5   judges of the facts of this case. If any expression of mine,

6   or anything I may or may not have done or said would seem to

7   indicate any opinion that relates to a factual matter I

8   instruct you to disregard it.  In the course of instructing

9   you on the law of this case I may refer to some of the

10  evidence in the case.  In their arguments counsel also

11  referred, of course, to the evidence in the case.  You are by

12  no means restricted to the evidence to which I may refer or

13  to which counsel may have referred.  In determining the guilt

14  or innocence of the defendant you may consider any testimony

15  or any exhibit that has been produced during the course of

16  the trial.  You are to consider only the evidence that has

17  been presented during the trial, but you are not limited to

18  the bald statements of the witnesses or the literal meaning

19  of the exhibits that you have in evidence.  You are permitted

20  to draw any reasonable inference that would be suggested by

21  the facts as you find those facts.  You have heard counsel

22  outline their cases at the beginning of the trial; and they

23  asked questions of witnesses during the course of the trial;

24  and you have heard their closing arguments to you.  As I

25  indicated to you before, and I remind you again, the

statements in the arguments of counsel are not evidence in the case.  The only exception to this relates to stipulations, if there are any that have been agreed upon. In this case there is one stipulation agreed to by counsel for the government and the defendant; and you may accept that stipulation as evidence and regard that fact as conclusively determined.  And that stipulation was made for the purpose of this case and indicates and agrees that the KH-11, the satellite about which you have heard testimony, was operating in 1984 as it has been indicated and depicted in the manual that had been issued in 1976.

During the course of the trial I have been called upon to make rulings on admissibility of certain offered evidence. You should not be concerned with my rulings or the reasons for those rulings because the admissiblity of evidence is purely a question of law.  When I admitted evidence despite counsels' objections you should not infer that that evidence is any more or less valuable than any other evidence.  If I sustained an objection and did not allow a witness to answer a question you must not guess what the answer might have been.  You must not speculate as to the reason the question was asked or the reason for the objection.  The defendant has the right to object to any evidence offered against him and to obtain the legal opinion of the Court as to whether that evidence is admissible, and if admissible for what purposes

1   and to what extent.  You are not to infer that any objections

2   to evidence had any other purpose.  The same, of course, is

3   true with respect to objections which may have been made by

4   the government.  Any evidence to which an objection was

5   sustained by the Court and evidence that was ordered stricken

6   by the Court must be entirely disregarded by you.

7          As you know, this is a criminal case; and there are

8   certain rules, general rules, that apply to criminal cases as

9   such.  First let me refer to the indictment.  You will have a

10  copy of that to take into the jury room.  That is simply a

11  formal method of accusing the defendant of a crime.  It is

12  not evidence against the accused; and it does not create any

13  presumption that the defendant is guilty.  And by filing

14  pleas of not guilty to each of the 4 counts of the indictment

15  the defendant has challenged the government to prove in Court

16  every fact that is alleged in the indictment.  Further, the

17  pleas of not guilty serve as a continuing denial by the

18  defendant of all the evidence offered against him by the

19  prosecution.

20         Another rule that applies to criminal cases is that a

21  defendant is presumed to be innocent.  The defendant, even

22  though accused of a crime, begins the trial with a clean

23  slate, and that is to say with no evidence against him.  The

24  government has the burden of proving that the defendant is

25  guilty beyond a reasonable doubt.  From the beginning of the

trial, then, to the end of the trial the government has the burden of establishing beyond a reasonable doubt every fact that is essential to the conviction of the defendant.  The defendant has no burden of proof and no duty to prove he did not commit the alleged crime.  The government is required to prove, as I have indicated, that the defendant is guilty beyond a reasonable doubt; and that means that to convict the defendant you must not have a reasonable doubt as to his guilt.  You must be convinced to a moral certainty that the defendant is guilty.  If you are not convinced to a moral certainty, if you have a reasonable doubt, then you must find the defendant not guilty to that count or as to those counts as to which you have that particular feeling. A reasonable doubt may arise not only from the evidence produced but also from a lack of evidence.  As I have indicated, the government has the burden to prove the defendant guilty beyond a reasonable doubt of every essential element of the crimes as charged; and the defendant has no burden to put on any evidence.  In determining whether the government has proven its case you also may consider testimony that counsel for the defendant has brought out in cross examining witnesses who were called by the government to testify.

There are two types of evidence from which you, as jurors, may properly find a defendant guilty of an offense. One is direct evidence, such as the testimony of, for

1   example, a witness who is reporting on something that he or
2   she has observed and is reporting on that.  The other is
3   circumstantial evidence. That is, the proof of a chain of
4   circumstances that suggests that a defendant committed an
5   offense.  As a general rule the law makes no distinction
6   between direct and circumstantial evidence, simply requiring
7   that before convicting a defendant you must be convinced of
8   the defendant's guilt beyond a reasonable doubt from all the
9   evidence in the case.
10       As jurors, you are the sole judge of the credibility of
11   the witnesses and the weight that their testimony deserves.
12   You should carefully scrutinize the testimony given by each
13   witness who has testified, the circumstances under which the
14   witness has testified and every matter that is in evidence
15   that indicates to you whether or not a witness is worthy of
16   belief.  You should consider the witness's intelligence, the
17   motive, the state of mind, the demeanor and the manner of the
18   witness while on the stand testifying.  You should also
19   consider any relation that a witness may bear to either side
20   of the case, the manner in which the witness might be
21   affected by the verdict and the extent to which, if at all,
22   the testimony of a witness is either supported or
23   contradicted by other evidence.  Inconsistency or a
24   discrepancy in the testimony of witnesses may or may not
25   cause you to discredit parts of that testimony.  2 or more

individuals who are reporting on a particular matter may report it differently; and it is not uncommon for people to forget something or to remember it incorrectly. You should, therefore, consider any inconsistencies or discrepancies in testimony as well as any vagueness or limited recollection on the part of witnesses. But, in weighing the effect, consider whether or not the inconsistency or the vagueness pertains to some important part or to some unimportant detail and whether or not the inconsistency or the vagueness results from some innocent mistake or from a deliberate falsehood.

During the trial you have heard and seen two video taped depositions that have been presented to you. Those consist of sworn answers to questions that were asked by attorneys in the case at a prior time. Those two witnesses were Derek Wood and Sydney Jackson, the editor-in-chief and the managing editor, respectively, of Jane's Weekly, a British publication. That video taped testimony is entitled to the same consideration as any testimony given in the courtroom. And that is that you should judge it as to credibility. You should weigh it and otherwise consider it in the same way as if the witness had been present and had testified during the course of the trial. Also, as to those two witnesses, Mr. Wood and Mr. Jackson, you recall that there was reference to immunity that had been granted to them prior to them giving testimony relating to this case. An individual who testifies

under a grant of immunity with a promise from the government
that he will not be prosecuted is none the less a competent
witness.  That testimony should be examined by you, however,
with greater care than the testimony of an ordinary witness;
and you should consider whether or not the testimony may be
colored in such a way as to further that witness's own
interests.  After the consideration that you give to that
testimony, you may give the testimony of  the immunized
witness such weight as you may feel it deserves.

Now, the rules of evidence permit certain individuals to
testify as to opinions or conclusions.  Individuals who
testify as such are referred to as expert witnesses.  These
are individuals who, because of education or experience have
become expert in some art or some particular profession or
science; and they may state an opinion as to relevant and
material matters in which they profess to be experts.  They
may also state their reasons for that opinion.  You should
consider those expert opinions that have been received in
evidence in this case; and you should give them such weight
as you may think they deserve.  The weight that is to be
given an expert opinion may depend upon the education, the
position and the experience of the witness and the reasons
that are given in support of the opinion and the strength or
any other evidence that bear upon the same issue.  You recall
that during the course of the trial a number of individuals

were qualified to testify as experts.  On behalf of the

government  you heard the testimony of Richard Hineman, who

is with the CIA, of Robert Chapin with the Navy, of Rutledge

Hazzard, a general with the Army, and of Richard Kerr with

the CIA.  You also heard the testimony of, on behalf of the

defendant, of Jeffrey Richelson, of John Pike and Roland

Inlow.  I think it is fair to state that there are

differences in some of the opinions that these witnesses

gave.  They testified relating to whether or not there was

potential damage and whether or not the issues related to

this case had been subject to public disclosure.  As I say,

you are to consider what you heard from those witnesses; and

if you find a conflict in their opinions then you may resolve

that conflict by considering their respective educations,

positions and the experience of the witnesses as well  as

whether or not the reasons that they gave in support of their

opinions justify those opinions as well as all of the other

evidence in the case.  After you have considered all of the

factors that I have referred to that bear upon the

credibility of a witness you may decide to reject some or all

or none of the testimony of any particular witness.  In other

words, give the testimony of any witness whatever weight you,

as jurors, may think it deserves.

   The law does not require a defendant to take the stand and

testify; and the defendant chose not to do so.  That was his

1   right.   You may not infer from his decision not to testify

2   that he is more likely to be guilty than if he had chosen to

3   testify.

4        Now, I have referred to the indictment, simply

5   indicating that you would have a copy of it and as to what

6   effect it has in this case.  You will have that, as I say, to

7   take with you into the jury room.  You will note there are a

8   number of counts.  Specifically there are 4 counts in the

9   indictment.  Each count represents a separate criminal charge

10   against the defendant; and I will explain to you now what you

11   need to know to reach a verdict as to each of those counts;

12   and under each of the counts I will refer to what are so

13   called essential elements of the crime that is charged in

14   those counts.  The government must prove all of those

15   elements of a crime to prove that the defendant is guilty of

16   that crime.  If you have a reasonable doubt as to one or more

17   of the essential elements of a crime then you must find the

18   defendant not guilty of that crime.

19        Now, the first count, count 1 of the indictment is

20   brought under a particular provision of the United States

21   Code, specifically Title 18, the section that is known as 93,

22   a portion of that.  Let me refer to it just briefly and to

23   quote it to you, at least the relevant portions.  It reads:

24            "Whoever lawfully having access to any photograph

25            relating to the national defense willfully

communicates, delivers, transmits or causes to be
communicated, delivered or transmitted the same to
any person not entitled  to receive it shall be
guilty of an offense against the laws of the United
States."

Now, you will recall, as counsel have argued to you and
from the evidence in the case, that count 1 refers to the
photographs that were published in Jane's Defense Weekly and
also the Naval report that was published relating to those
photographs.   There are 3 essential elements that must be
proved to establish the offense that is charged in the first
count.   And that is, first, that the defendant, Samuel
Morison, had lawful access to the photographs that are
referred to in count 1.   Secondly, that on or about the date
that is alleged in the first count of the indictment the
defendant, Samuel Morison willfully caused the photographs to
be delivered and transmitted to a person who was not entitled
to receive them.   And third, that the photographs that were
delivered and transmitted related to the national defense.

Now, the third count of the indictment is also brought
under a particular portion of the United States Code, another
portion of section 793.   And a particular part of that reads
as follows:

"Whoever having unauthorized possession of any
document or writing relating to the national defense

willfully retains the same and fails to deliver it to the officer or employee of the United States entitled to receive it shall be guilty of an offense against the laws of the United States."

Again, count 3 refers to the documents that have been referred to as excerpts from the weekly wires relating to the explosion at Severomorsk that were found, according to the testimony, in the defendant's home. There are 3 essential elements to be proven to establish the offense as charged in the third count of the indictment. First, that the defendant, Samuel Morison, had unauthorized possession of portions of the documents and writings that are referred to in that count, count 3. Secondly, that on or about the dates that are referred to in count 3 of the indictment the defendant did willfully retain those documents and the writings that were referred to in that count and failed to deliver them to the officer or employee of the United States who was entitled to receive them. And third, that the documents that were willfully retained and not delivered were documents relating to the national defense. An individual has unauthorized possession of documents and writings when he possesses those under circumstances or in a location which is contrary to law or regulation for the conditions of his employment.

Now, I referred to both counts so far, 1 and 3; and

1  there are certain matters I've referred to that must be
2  proven in that.  Let me just say a few more words about
3  those.  As to both counts, counts 1 and 3, the government
4  must prove that the specific items, either the photographs as
5  they relate to count 1 or the documents as they relate to
6  count 3, relate to the national defense.  You will recall
7  that was the wording that was used in both of the relevant
8  sections of the United States Code.  And this is a question
9  of facts solely for determination by you as jurors.  It is
10 not necessary for the government that all parts of the
11 documents or the photographs relate to national defense.  To
12 establish this element of the defense the government has to
13 prove that some part of the documents and/or the photographs
14 are related to national defense.  And that term, the term
15 national defense, includes all matters that directly or may
16 reasonably be connected with the defense of the United States
17 against any of its enemies.  It refers to the military and
18 naval establishments and the related activities of national
19 preparedness.  To prove that the documents or the photographs
20 relate to national defense there are two things that the
21 government must prove.  First, it must prove that the
22 disclosure of the photographs would be potentially damaging
23 to the United States or might be useful to an enemy of the
24 United States.  Secondly, the government must prove that the
25 documents or the photographs are closely held, in that the

relevant government agency has sought to keep the information
from the public generally, and the documents or photographs
have not been made public and are not available to the
general public.   Evidence that a document or photograph was
at the time of the offense that is charged marked, classified
as secret may be some evidence that the document or
photographs and its contents relate to the national defense.
You are free to give such classification any weight that any
of you may think it is entitled to have.   You may totally
disregard the fact of classification if you conclude that
that fact is not entitled to any weight in this case.
Whether or not a document or photograph is classified secret
is not conclusive as to whether it does or does not relate to
the national defense.   The government is not required to
prove that the document or the photographs were in fact
properly classified as secret.   It is for you as members of
the jury to determine from all the evidence whether the
documents or the photographs referred to in the indictment
relate to the national defense.

        Now, I have referred to counts 1 and 3 relating to the
charges as they relate to the photographs and the documents,
the weekly wires.   Counts 2 and 4 are similar in that they
are both brought under the same Title of the United States
Code, Title 18, but they are brought under a different
section -- but both are brought under the same section,

different, however, than 1 and 3.   That is Section 641.   The
statute that relates to that under 641 states in part:

> "Whoever embezzles, steals or knowingly converts to
> his own use or the use of another or without
> authority sells or conveys or disposes of anything of
> value of the United States or of any department or
> agency thereof which has a value in excess of the sum
> of $100 shall be guilty of an offense against the
> laws of the United States."

Again, there are certain essential elements the
government must prove beyond a reasonable doubt to establish
the offense that is described in counts 2 and 4.   First, that
the thing of value as described in the indictment under 2 and
4 belong to the United States or an agency or department
thereof, and have a value in excess of $100.   Secondly, that
the defendant embezzled or stole or purloined or converted
those things of value to his own use or to the use of another
or that he did that without authority, knowingly and
willfully, and did sell and convey, dispose of those things
of value knowingly and willfully.   Third, that the defendant
knowingly and willfully and without authority with intent to
deprive the owner of the use of the benefit of the thing of
value so taken, that he did those acts knowingly and
willfully, as I have indicated.

Now, the statute uses the words to steal and convert;

and those words simply mean wrongful or willful taking of something that belongs to another with the intent to deprive the owner of its use or benefit either temporarily or permanently. No particular type of movement or carrying away is required to constitute what is stated to be a taking in the statute. Thus, one may convert property of the United States without intending to permanently deprive the United States of that property.

There is also use of the word sell; and as it is used in this particular statute it means to give or deliver or exchange property for money or its equivalent. The word convey simply means to transfer something from one to another.

To embezzle, as it is used in the statute, means the wrongful or willful taking of property of someone after that property has lawfully come within possession of one who has control of it.

The government is not required to prove that the defendant did all of these things, that is, that the government need not prove that he embezzled, stole or purloined and sold and conveyed the things of value that are referred to in the indictment. It is sufficient of counts 2 and 4 if the government proves beyond a reasonable doubt that the defendant did or caused one of those acts. In the absence of face value, value may be determined by looking to

a market value, if there would be such. If there is no market value than one for a certain property, its value may be determined by reference to a price that is commanded in the market place, whether that market place be legal or illegal. To determine the value of the exhibits you may not aggregate the value of all the exhibits to reach a total value of $100. That is, to find the defendant guilty under counts 2 and 4 you must find the value of each one of the exhibits individually exceeds $100.

All four of these counts as I have referred to them in my description of them to you used the word willfully. An act is done willfully if it is done voluntarily and intentionally and with the specific intent to do something that the law forbids. That is to say, with a bad purpose either to disobey or to disregard the law. With respect to the offenses that are charged in the indictment specific intent must be proved beyond a reasonable doubt before a defendant can be convicted. Specific intent, as that term suggests, requires more than a general intent to engage in a certain conduct. To establish specific intent the government must prove that the defendant knowingly did an act which the law forbids. It is the government's burden to present affirmative evidence of the existence of the required unlawful intent. Again, in determining whether or not the intent existed you may look at all the facts and the

1    circumstances involved in the case.

2        I referred to 4 counts  in the indictment; and I would

3    instruct you that a separate crime or offense is charged in

4    each count, in each of the 4 counts in this case.  Each

5    charge and the evidence pertaining to it should be considered

6    separately by you in arriving at a verdict in the case.

7        When you retire to deliberate in this case each of you

8    should exercise your individual judgment.  To return a

9    verdict it is necessary that each of you must agree with that

10   verdict.  In other words, your verdict must be unanimous.  It

11   is your duty as jurors to consult with each other, to

12   deliberate with a view to returning a unanimous verdict in

13   the case if you can do so without compromising your

14   individual opinions about the case.  Each of you must decide

15   the case for yourself, but you should not make up your mind

16   until you have discussed the evidence with your fellow

17   jurors.  In the course of your deliberations do not hesitate

18   to reexamine your views and change your opinion if you become

19   convinced that your opinion is wrong, but do not surrender

20   your honest conviction solely for the purpose of meeting your

21   fellow jurors' consent or for the mere purpose of returning a

22   unanimous verdict.

23       As jurors you are not partisans.  Rather, you are the

24   judges of the facts of this case.  Your sole interest in the

25   case is to ascertain the truth from the evidence that has

been presented to you.   There is nothing unusual about the
way in which you are to consider the evidence in this case.
Simply use your common sense in the light of your knowledge
of the natural tendencies and the inclinations of human
beings.

If you find the accused is guilty beyond a reasonable
doubt, say so.   If not, say so.   Keep in mind that it would
be a violation of your sworn duty to base a verdict upon
anything other than the evidence in the case.

The punishment that is provided for by law for the
offenses that are charged in the indictment is a matter
entirely within the province of the Court.   Therefore, you
should not consider the possible punishment in arriving at
your verdict as to the guilt or the innocence of the
defendant.

When you retire to the jury room, Juror #1, Mr. Frank
Scriven (phonetic) will act as your foreman.   He will preside
over your deliberations and he will be your spokesman in
Court.   When you have reached a unanimous verdict, an
agreement as to your verdict, you will notify the bailiff and
you will then return to the courtroom with your verdict.   If,
during the course of your deliberations it is necessary to
communicate with the Court, you may send a note with the
bailiff.   You should not attempt to communicate with the
Court except by writing; and bare in mind always that you are

not to reveal to the Court or to anyone how you stand either

numerically or otherwise on the question of guilt or

innocence until after you have reached a unanimous verdict.

When you have reached a unanimous verdict you will

return to the courtroom; and the clerk will then have a role

call and then we will ask if you have agreed upon your

verdict.  You will say, we have.  She will say, who shall

speak for you.  You will say, our foreman.  Mr. Foreman, you

will then stand and in response to questions asked by the

clerk, how do you find the defendant as to count 1, count 2,

count 3, count 4 — she will give each of them individually —

you will give your verdict as to guilty or innocent as to

each of those counts.

May I see counsel.

                    SIDEBAR CONFERENCE

        THE COURT:  Government's exceptions?

        MR SCHATZOW:  Judge, one thing.  The first time

that you referred to count 1 I believe you said that count 1

refers to the, also to the Naval report relating to those

photos.  Then the other references you made to count 1 you

just said the photographs.  There is no reference to a Naval

report.  I was wondering if you want to clarify that.  It was

the very first time —

        THE COURT:  Count 1 refers only to the photographs.

        MR SCHATZOW:  Yes.  Count 1 only refers to — the

1    other --

2              THE COURT:   And count 3 refers to the weekly wire.

3              MR SCHATZOW:   Yes.   The other 2 things.   You

4    wouldn't want to care to take back what you said about moral

5    certainty, would you?

6              THE COURT:   I didn't use the language

7    (indiscernible)

8              MR SCHATZOW:   You used the language about moral

9    certainty --

10             THE COURT:   Yes, but I did not give the definition

11   objected to by the fourth circuit.

12             MR SCHATZOW:   Right, but you used moral certainty.

13   Want to take it back?

14             THE COURT:   No.

15             MR SCHATZOW:   Oh, okay.   Then the other thing is

16   you told them they couldn't aggregate the value for the

17   photos.   Want to take that back?

18             THE COURT:  No.

19             MR SCHATZOW:   If you would just clear up

20   (indiscernible)

21             THE COURT:   Defense objections?

22             MR MUSE:   One second.   It may have been a defect of

23   my note taking, but I'm not sure that you defined it actually

24   the way you said you were going to yesterday in terms of it

25   not being a strain, anything reasonable or foreseeable.

1    Potentiality.

2           THE COURT:   Take exception to that.

3           MR MUSE:   And also just to note our exception with

4    regard to the notion of potential damage.

5           THE COURT:   Yes.

6           MR MUSE:   and (indiscernible) we preserve our

7    position on it.

8           THE COURT:   All right.   And your failure to grant a

9    directed verdict.

10          MR MUSE:   And finally, Your Honor, with regard to

11   the instructions counts 4 and 1 and 3 we set forth the

12   particular elements that we thought the Court should give to

13   the extent that (indiscernible) note our objection.

14          THE COURT:   Okay.

15          MR MUSE:   Thank you.

16                      END SIDEBAR CONFERENCE

17          THE COURT:   Members of the jury, just one

18   clarification, referring to the indictment.   You will notice

19   this rather readily from reading it.   The first count refers

20   to the photographs and the third count refers to the weekly

21   wire  excerpts, the documents as opposed to the photographs.

22      Members of the jury, the time has now come for you to

23   retire to deliberate upon your verdict.   Miss Cage, will you

24   please swear the bailiff.

25          THE CLERK:   Will you come forward, please.   Raise

1    your right hand.   In the presence of almighty God do you

2    solemnly promise and declare that you shall well and truly

3    keep the jury together in some convenient room; and you shall

4    not suffer anyone to speak to them, nor shall you speak to

5    them yourself unless it is to ask them whether they have

6    agreed upon their verdict without leave of the Court.

7              THE BAILIFF:   I do.

8              THE CLERK:   Would you state your name for the

9    reocrd.

10             THE BAILIFF:   Clifton Hargadon, H A R G A D O N.

11             THE COURT:   Mr. Martindale and Mr. Burden, you have

12   been serving as alternate jurors in this case.   The other 12

13   jurors are here, prepared to go forward with their

14   deliberations; so you are excused from any other

15   participation in the case.   I wish to thank both of you for

16   your presence and your patience and understanding.   Do either

17   of you have any personal objects in the jury room?   Get those

18   if you will and then come out through the door here, if you

19   will, please.   Members of the jury, the clerk will give you

20   the exhibits and a copy of the indictment in the case.   I am

21   also going to give you the tape with the instructions I just

22   referred, just given you.   All you have to do to play this is

23   simply plug it in, push down the forward, which is on the

24   top, making sure it is on -- it is on start now, so just push

25   down forward.   If you want to rewind there is a rewind

1  button.  If you want to stop it or if you want to fast forward

2  they are on the top.  So, that is simply the instructions I

3  have just given you.  You have it if you wish to use it.

4                              (Pause)

5              THE COURT:  As soon as the other 2 gentlemen come

6  out you may retire.  Wait for them.

7                              (Pause)

8              THE COURT:  Pat, check.  They may have gone out the

9  other door.

10                             (Pause)

11             THE COURT:  They've gone?  Members of the jury, you

12  may now retire to deliberate upon your verdict.

13                         JURY NOT PRESENT

14             THE COURT:  Gentlemen, what I would plan to do is —

15  it is now 5:05.  My practice usually is to let the jury

16  decide what they want to do.  If they should not have a

17  verdict, as well they might not, within the next hour I plan

18  to send a note to them saying, do you want to have dinner and

19  continue deliberating, or do you want to go home and come

20  back tomorrow, what do you want to do.  So, why don't — you

21  all will be nearby, I assume.

22             MR SCHATZOW:  Yes, sir.  We'll be right upstairs,

23  Your Honor.

24             THE COURT:  Okay.  And you all will be where?

25             MR MUSE:  We'll have somebody —

1        THE COURT:  Well, you will be nearby.

2        MR MUSE:  Yes.

3        THE COURT:  Okay, because if they should ask for

4  anything by, in writing, I would like to be able to consult

5  with you first.

6        MR MUSE:  Could we be 5 minutes away?

7        THE COURT:  All right.  In any event, I would suggest

8  you be back, if you haven't heard from me, at least by six

9  and I'll send a note in at that time and see what their ——

10  what they want to do.  Okay.

11        THE CLERK:  All rise.  This honorable Court is now

12  in recess.

13                 RECESS

14        (Tape turned on in middle of colloquy)

15        THE COURT:  —— home.  Do you want it 9:30 or 10:00?

16        MR MUSE:  We're going to go back to Washington

17  since it's early enough, so 10:00 would be preferable.

18        MR SCHATZOW:  Do you want us here for the beginning

19  of the deliberations?

20        THE COURT:  Yes, sir.  When the jury goes out I

21  want you here.

22        MR SCHATZOW:  Okay.  Well, 10:00 is convenient for

23  Mr Muse.

24        THE COURT:  Okay.  Paul.

25             OFF RECORD

JURY PRESENT                              THE COURT:   Be

seated, please.   Members of the jury, I understand you have

reached your first decision.   You want to go home.   Right?

(Laughter)

THE COURT:   Okay.   I think, as I indicated to

counsel, it is my practice to allow you all, the jurors, to

decide whether you want to stay or go home.   I understand a

lot of reasons you may wish to go home rather than staying

late and deliberating.   So, what we are going to do is

adjourn until tomorrow morning and ask you to come back and

to continue your deliberations, but what I am going to ask

you to do is this.   If you come as some of you will, I'm

sure, and go in the jury room, please do not discuss the case

until 10:00.   We'll call you into the courtroom and take a

role call and then excuse you to begin your deliberations.

So, if 2 or 3 of you straggle in please do not discuss the

case.   Do it only when all 12 of you are present.   Now,

there is one other problem.   You will recall we had alternate

jurors during the trial.   Those gentlemen have now been

excused, so it is up to you 12, so please be here tomorrow.

Don't any of you fail to show.   Okay.   All right.   What I am

going to do is lock the jury room and have nobody come in.

Nobody to empty ashtrays or clean up or anything, so there

can be no repetition of what happened yesterday.   It will be

secure.   Leave your documents out.   I do suggest you put them

1  in the envelopes I think you all have.  If you don't let me

2  know and we'll have them available for you with your name on

3  the outside.  Leave them there.  It will be secure.  Come

4  back in the morning so we can begin no later than 10:00.  As

5  I say, do not discuss the case until you return to the

6  courtroom.  We'll have role call and then you will return to

7  deliberate when you are all present.  Again, as I've stated

8  before each time we have an adjournment, please do not

9  discuss -- not please, but do not discuss the case with

10  anyone else.  Don't go home and discuss it with somebody.

11  Don't read or listen to anything about it that may be in the

12  printed or electronic media.  Return tomorrow no later than

13  10:00.  Okay.  Thank you.

14                    JURY NOT PRESENT

15          THE COURT:  Arthur, if you will see to it that the

16  jurors get the elevator and get out of the building and then,

17  in the meantime, I want to make sure that, Pat, you can make

18  it secure, put the alarm on.  Okay.  Anything further,

19  counsel?  Okay.  Promptly 10:00.  No later than that so we

20  can have them go out.  Okay.

21          THE CLERK:  All rise. This honorable court is now

22  adjourned.

23                    ***********

24

25

1        I certify that the foregoing is a correct transcript of

2    the proceedings in the above-entitled matter.

3                                February 12, 1986

4

5                        *Janice Saunders*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25