IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | Criminal No. RDB-17-069 |
| | * | |
| **HAROLD T. MARTIN, III** | * | |

<u>**REPLY IN SUPPORT OF MOTION TO SUPPRESS STATEMENTS**</u>

Defendant, Harold T. Martin, III, by and through his undersigned counsel, hereby submits this reply in support of his motion to suppress statements and in response to the government's opposition to the motion (ECF 141).

In its opposition, the government concedes that Mr. Martin was interrogated by law enforcement and that he was not issued <u>Miranda</u> warnings before the interrogation. The government's defense to the non-<u>Mirandized</u> interrogation is that Mr. Martin was not in custody. In fact, he was in custody.

The Fourth Circuit law on whether an individual is in custody is well-settled and highly fact specific. <u>See</u> <u>United States v. Giddins</u>, 856 F.3d 870 (4th Cir. 2017). "When deciding whether a defendant not under formal arrest was in custody—and thus if the <u>Miranda</u> requirements apply— a court asks whether 'under the totality of the circumstances, a suspect's freedom of action was curtailed to a degree associated with formal arrest.'" <u>Id.</u> at 889 (quoting <u>United States v. Hashime</u>, 734 F.3d 278, 282 (4th Cir. 2013)). "It is an objective inquiry, and essentially asks whether a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." <u>Id.</u> (internal quotation marks and citations omitted). "This determination 'calls for application of the controlling legal standard to the historical facts . . . . [and thus] presents a mixed question of law and fact qualifying for independent review." <u>Id.</u> (quoting <u>Thompson v. Keohane</u>, 516 U.S. 99, 112–13 (1995)). "Facts relevant to the custodial inquiry include, but are not limited

to, the time, place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the presence of multiple officers, the potential display of a weapon by an officer, and whether there was any physical contact between the officer and the defendant." Id. at 889-90 (quoting Hashime, 734 F.3d at 283) (internal quotations omitted).

The facts relevant to the question of custody will be developed at the upcoming motions hearing. It is expected that the evidence will show that numerous federal law enforcement officers, including several armed SWAT team members toting semi-automatic rifles and wearing tactical gear, snuck up on Mr. Martin in his front lawn, tackled him to the ground, and cuffed his hands behind his back as he lay face down in the grass. The evidence will also show that the armed, uniformed agents then activated a "flash-bang" grenade at his front door to scare his barking dog away from the entrance. This explosive device is used to temporarily disorient a person or animal's senses. It produces a blinding flash of light and intensely loud bang. The bang could be heard several hundred feet away. Mr. Martin was only a few yards away from the device when it was activated. Some of the armed, uniformed agents then entered the house with their guns drawn as other armed FBI agents stood next to Mr. Martin who remained handcuffed in his front yard. At the same time the agents flooded his yard and home, Maryland State Troopers had blocked off the entire street to vehicular traffic.

After some period of time, Mr. Martin was escorted inside his home by the agents. Several agents, with firearms on their person, then questioned him for more than two hours in his small living room. During the interrogation, his wife was not allowed in the house and stayed outside in her car. As Mr. Martin was questioned by FBI agents, armed SWAT team agents searched his house, his car, and his shed. An armed SWAT team member stood guard at the front door as his armed counterparts roamed freely throughout the house and yard.

These are among the many facts that will establish that Mr. Martin was in custody when he was interrogated by FBI agents. After hearing the testimony of witnesses to the events, the Court will conclude that Mr. Martin was in custody during the interrogation and that his statements should be suppressed.

Respectfully submitted,

/s/

JAMES WYDA, #25298
Federal Public Defender
DEBORAH L. BOARDMAN, #28655
First Assistant Federal Public Defender
SHARI SILVER DERROW, #19181
Assistant Federal Public Defender
Office of the Federal Public Defender
100 South Charles Street, Tower II, 9th Floor
Baltimore, Maryland 21201
Phone: 410-962-3962
Fax: 410-962-0872
Email: jim_wyda@fd.org
       deborah_boardman@fd.org
       shari_derrow@fd.org