IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal No. RDB-17-069 |
| | * | |
| HAROLD T. MARTIN, III | * | |

**MOTION FOR DISCOVERY PURSUANT TO SECTION 4
OF THE CLASSIFIED INFORMATION PROCEDURES ACT**

Defendant Harold T. Martin, III, through counsel, writes pursuant to Section 4 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. III, to renew his request for a Court Order requiring the government to produce: (1) mirror images of the devices used to create the "Library," an electronic database created by the National Security Agency ("NSA") which contains some information from certain electronic storage devices seized from Mr. Martin's residence; and (2) mirror images of the computers containing operating systems seized from Mr. Martin's residence (collectively, "mirror images").[1]

**INTRODUCTION**

The defense renews our request for mirror images because, despite the government's assurances to the contrary, we have determined that the Library does not contain the functional equivalent or near equivalent of mirror images of the electronic devices. See Ex. 1 (Affidavit of Larry Daniel). As a result, it is impossible for us to independently review the government's electronic evidence or test the government's computer forensic analysis, which is set forth in two expert reports authored by the NSA. See Ex. 1B (Feb. 28, 2018 Report); Ex. 1C (Oct. 9, 2018 Report) (filed separately via CISO).

---

[1] A "mirror image" is an exact copy of a computer hard drive or external hard drive without any data removed, missing, altered, or added.

1

At the August 17, 2018 hearing, the Court ordered that we have meaningful access to the electronic discovery. After much on-the-record discussion, it was understood that the electronic Library made available to us at the NSA would afford us meaningful access to the electronic discovery such that we could test the government's expert analysis and conduct our own independent analysis. As it turns out, we are unable to do either. Simply put, we are unable to test or rebut the government's evidence.

Without mirror images or their functional equivalent, we are forced to accept the government's expert forensic reports at face value. This is problematic because the forensic reports will be a centerpiece of the government's case at trial. Adding further concern is the government's stated intent to provide rolling supplements to the expert reports. As it currently stands, the defense will not know the entire substance of the reports until mere weeks, or perhaps days, before trial. Indeed, the government recently supplemented its 16-page February 28, 2018, forensic report with a 104-page forensic report provided on October 9, 2018—nearly two months after the August 17, 2018, expert disclosure deadline set forth in the Court's July 3, 2018, scheduling Order. The government's rolling expert report disclosures, combined with its failure to provide the defense with the functional equivalent of mirror images, runs afoul of the Court's August 17, 2018, Order, the scheduling Order, Federal Rule of Criminal Procedure 16, due process, and the repeated, on-the-record assurances of the government that it will provide the defense with meaningful access to the electronic discovery in this case.

Nearly a year after we first raised this issue with Judge Garbis, and more than two years after Mr. Martin was arrested, we still have not been given the discovery we need to test and rebut the government's computer forensic analysis. The government, meanwhile, has spent two years conducting its forensic analysis and is poised to continue updating its expert reports until the eve

of trial. The government's inadequate expert disclosures make it impossible for us to effectively prepare Mr. Martin's defense and place the trial schedule at risk. The Court should order the government to comply with its August 17, 2018, ruling by providing mirror images for the defense's review in a secure government facility. The Court should also bar the government from producing any additional expert discovery or relying on any computer forensics analysis that it has not already disclosed in the reports dated February 28, 2018, and October 9, 2018.

## BACKGROUND

On August 17, 2018, the Court presided over a hearing to determine the scope of the defense's access to electronic files allegedly seized from Mr. Martin. The Court agreed that the electronic files are relevant and helpful to Mr. Martin's defense and that the defense must have meaningful access to them. The sole question was whether the government's proposed protocol for the defense's examination of the electronic files ensured meaningful access. See Ex. 2 (Protocol for Defense Examination of Electronic Data Seized from the Defendant).

At the hearing, the Court stated repeatedly its intent to provide the defense with access to the functional equivalent of mirror images, so that we may conduct an independent forensic examination of the electronic files. See Aug. 17, 2018, Hr'g Tr. at 74:1 ("[M]irror images are going to be produced for you."); id. at 80:25-81:2 ("[T]he Government is providing access to images of the digital media within the library. I interpreted that to be essentially mirror images."); id. at 83:19-20 ("So you have access to the mirror image . . . ."). The government, over and again, assured the Court that its proposed protocol ensured defense access to the functional equivalent of mirror images. See, e.g., id. at 82:14-17 ("What they're instead getting is all of the data that is on that device is put into the system that they will be given, and they'll be able to see all of things we've talked about, except for the content of the files . . . ."). According to the government, under

the proposed protocol, the defense would have access through the Library to "all of the data and all of the data about that data." Id. at 83. The only thing the Library would not contain, the government explained, is the actual content of the files, and the defense could request particular files or seek Court intervention to obtain them. Id.

Based on the government's representations, the Court granted the government's motion pursuant to CIPA section 4, as modified by its protocol for the defense's examination of electronic files. The Court acknowledged that, after traveling to the NSA to see the Library, the defense "may not be satisfied" and, if so, could seek Court intervention under CIPA Section 4. Id. at 59; see also id. at 63:12-13 ("The first step is for [the defense] to go out there [to the NSA] and start."). Finally, the Court set a deadline of September 25, 2018, for the government to produce any classified materials, other than the twenty charged documents, which it intends to introduce at trial. See id. at 65:2-4 ("We are not going to have rolling document production, and we're not going to have supplementation."); id. at 72:17-19 ("We are not having rolling discovery. We are not having rolling documents, and people are going to have to do their homework early here. That's all there is to it.").

**ARGUMENT**

Upon the defense's review of the Library with our cleared computer forensics expert, Larry Daniel,[2] we have determined that, despite the government's previous representations at the August 17 hearing, we have not been provided mirror images or the functional equivalent or near equivalent of mirror images. Because of this, we are unable to independently review the government's evidence, and we cannot test the government's expert forensic reports. Moreover, the government's stated intent to provide rolling updates to the forensic reports have raised

---

[2]   Mr. Daniel's CV is attached as Exhibit 1A.

additional concerns. The government is not complying with the Court's scheduling Order or its clear intent to avoid "rolling document production." The Court should order the government to promptly produce mirror images for the defense's review in a secured government space and bar the government from producing or relying on any additional expert discovery.

### I. A Trip to the NSA with Our Expert Revealed the Library's Insufficiency.

The defense only discovered the issues with the Library after traveling to the NSA with Mr. Daniel. As explained by Mr. Daniel, upon familiarizing himself with the Library (referred to as the "Repository" in his affidavit), he determined that the Library is "the government's work product." Ex. 1 at ¶ 5. In Mr. Daniel's words: "[T]he Repository is the summary of the government's forensic analysis. The Repository does not allow me to review the actual evidence. It only allows me to review the government's summary of the evidence." Id. Because of this, Mr. Daniel is in the impossible position of trying to test the government's evidence using the government's work product. See id. at ¶¶ 5-6, 14. He cannot perform independent forensic analysis or test the government's expert reports.

### II. Like the Government's Experts, Our Expert Needs Access to Mirror Images.

To conduct his own analysis, Mr. Daniel needs mirror images. Access to mirror images of the 24 digital storage devices—which are the subject of the government's expert reports—would enable Mr. Daniel to attempt to recreate the NSA's work and, therefore, test the conclusions in its expert reports. See id. at ¶¶ 11-12. The NSA has mirror images of the devices and, in fact, relied on mirror images of the devices in creating the Library. The government's experts apparently relied on mirror images in drafting its forensic reports. See, e.g., Ex. 1C at 24, 52, 70, 73, & 91.

Providing copies of the mirror images for the defense's review, in a suitable government-controlled space, is only fair and would not be logistically difficult.

### III. Under the Current State of Affairs, the Defense Does Not Have Access to Critical Evidence.

#### A. We Cannot Visualize the Contents of Storage Devices Where the Charged Documents Were Allegedly Found.

In its October 9 expert report, the NSA included many "visualizations" of where documents were stored in particular devices. See Ex 1 at ¶ 11; see, e.g., Ex. 1C at 24, 52, 70, 73, & 91. These are essentially screenshots of the file directories on Mr. Martin's devices. We cannot see them or recreate them under the government's protocol. The Library that we have access to is a black screen with a blinking cursor. We cannot see the file structure. The government can and has produced compelling images of the file structure in its expert report. These images or visualizations are critical to the government's case at trial, as it will presumably argue that Mr. Martin knowingly possessed national defense information because his personal files (e.g., resume, graduate thesis) were saved in close proximity to files containing alleged national defense information. To bolster this argument, the government will show the jury the visualizations contained in its October 9 expert report. With our access to digital files limited to the Library, we have no ability to test whether the visualizations are correct or develop our own visualizations. As Mr. Daniel explains, the "visualizations are not in the [Library], and it is not possible to create those visualizations using the [Library]." Ex. 1 at ¶ 11. Mr. Daniel needs mirror images of the 24 digital storage devices referenced in the NSA's forensic reports to create the visualizations.

#### B. The Defense Needs Mirror Images of Mr. Martin's Computers that Contain Operating Systems.

Mr. Daniel also needs mirror images of the computers containing operating systems seized from Mr. Martin's residence. These mirror images are "critical to [his] analysis," because

6

operating systems (such as Microsoft Windows for a PC) contain a "wealth of information about files on connected storage devices." Id. at ¶¶ 8-10. This critical information is not in the Library. For example, operating systems such as Microsoft Windows store unique information about files, including when the computer accessed a file, who accessed the file, when a storage device was connected to the computer, and the program used to open and view the contents of the file. Id. at ¶ 9. All of this information is crucial to Mr. Martin's defense, but none of it is in the Library. Id.

On a more technical level, we identified a number of computer artifacts at the August 17 hearing that we expected to see in the Library and that our expert needed access to for his independent analysis. In particular, we read into the record that we needed operating system registry, jump lists, user assist, unallocated space, memory or pagefile.sys, dump files, web history, shell bags, prefetch, compound files, SQL databases, links data, data carving, events logs, volume shadow copes, Microsoft Office document metadata, and meta carving. See Aug. 17, 2018, Hr'g Tr. at 80:9-14. None of these computer artifacts, however, is in the Library. Ex. 1 at ¶¶ 8-10; see also Ex. 3 (Sept. 5, 2018 Email from AUSA Myers).

### IV.     The Defense's Computer Expert Cannot Move Forward.

As it currently stands, Mr. Daniel cannot do any of the crucial tasks he has been retained to do. Ex. 1 at ¶ 2. He cannot conduct his own independent forensic analysis. Id. He cannot test the conclusions contained in the government's expert reports. Id. Moreover, because the government intends to continue supplementing its expert reports without limit, Mr. Daniel is not even guaranteed sufficient time to test the expert reports and relay his findings to defense counsel prior to trial. If the Court does not intervene, Mr. Martin will be forced to go to trial without a complete understanding of the government's evidence or the opportunity to test and rebut it. The Court cannot tolerate such a result. The Court should order the immediate production of mirror

images of the devices used to create the Library and mirror images of the computers containing operating systems seized from Mr. Martin's residence.

## CONCLUSION

For the reasons stated above, the Court should order the government to immediately produce (1) mirror images of the devices used to create the Library and (2) mirror images of the computers containing operating systems seized from Mr. Martin's residence. The Court should also bar the government from producing or relying on any additional expert discovery.

Respectfully submitted,

/s/

_____
JAMES WYDA, #25298
Federal Public Defender
DEBORAH L. BOARDMAN, #28655
First Assistant Federal Public Defender
SHARI SILVER DERROW, #19181
Assistant Federal Public Defender
Office of the Federal Public Defender
100 South Charles Street, Tower II, 9th Floor
Baltimore, Maryland 21201
Phone: 410-962-3962
Fax: 410-962-0872
Email: jim_wyda@fd.org
    deborah_boardman@fd.org
    shari_derrow@fd.org