IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | Criminal No. RDB-17-069 |
| | * | |
| **HAROLD T. MARTIN, III** | * | |

**REPLY IN SUPPORT OF MOTION FOR DISCOVERY PURSUANT TO
SECTION 4 OF THE CLASSIFIED INFORMATION PROCEDURES ACT**

The government's refusal to produce the mirror images of Mr. Martin's home computers and his external storage devices deprives him of the ability to confront the evidence against him and investigate his own defense. Under the current state of discovery, Mr. Martin cannot defend the eight counts against him that are based on electronic evidence. Among the many investigative tasks he cannot currently do, the following four are the most critical:

1. Mr. Martin cannot independently test the government's conclusions in its computer forensic reports.

2. Mr. Martin cannot conduct an independent forensic analysis of the electronic evidence.

3. Mr. Martin cannot determine whether any allegedly classified information was found on his home computers (as opposed to the electronic storage devices that are in the Library).

4. Mr. Martin cannot determine whether he ever opened one of the eight indictment documents allegedly found on the external storage devices using one of his home computers.

The only remedy for these fundamental problems is the production of (i) mirror images of Mr. Martin's home computers and (ii) mirror images of his electronic storage devices that the

1

government used to create the Library. The government agrees that the Library does not contain the mirror images of any of Mr. Martin's devices. At the August 17 hearing, the defense and the Court were led to believe that the Library contained the functional equivalent of mirror images. It does not. Mirror images exist, can easily be reproduced, and can be made available to our computer expert at the NSA or FBI.[1]

## ARGUMENT

The Classified Information Procedures Act does not alter or diminish the fundamental due process protections that adhere in every criminal matter in courts across the country. See United States v. Moussaoui, 382 F.3d 453, 466 n.18 (4th Cir. 2004) ("There is no question that the Government cannot invoke national security concerns as a means of depriving [the defendant] of a fair trial."); see also id. at 472 (stating that "a defendant becomes entitled to disclosure of classified information upon a showing that the information is relevant and helpful to the defense . . . or is essential to a fair determination of a cause" (internal quotation marks omitted)).

The Fourth Circuit has held that the government's "classified information privilege" is a "qualified one" that must "give way" to a defendant's right to prepare his defense. United States v. Abu Ali, 528 F.3d 210, 247 (4th Cir. 2008). Preparing a defense includes conducting one's own analysis of the evidence and testing the government's expert evidence. We cannot do either under the current state of discovery.

---

[1] As with all the defense's requests pursuant to Section 4 of the Classified Information Procedures Act ("CIPA"), the issue is whether the defense is entitled to review and have access to particular items in discovery. Whether or not those items see the light of day at a public trial, either in whole or in part, is a separate question that will be answered later during Sections 5 and 6 of the CIPA process. For now, the defense merely needs access to the mirror images.

**I.     Mr. Martin Cannot Independently Test the Government's Conclusions in its Computer Forensic Reports or Conduct an Independent Forensic Analysis of the Electronic Evidence.**

The government has produced two computer forensic reports identifying evidence it intends to introduce at trial. We are unable to test these reports with the information contained in the Library. The problems with the Library are myriad.

**A.  The Library Is Derivative Evidence, not Original Evidence.**

The Library is the government's compilation of partial, preprocessed data from some of the electronic storage devices seized from Mr. Martin's residence. See Ex. 1 at ¶¶ 9-10 (Dec. 6, 2018, Affidavit of Larry Daniel); Ex. 2 at ¶¶ 6, 26 (Dec. 12, 2018, Affidavit of K. Gus Dimitrelos).[2] The Library was created by the government, using a special government-developed software, on terms and conditions known only to the government. This makes the Library government work product. Put another way, the Library is "derivative" evidence, which is evidence that is derived or processed from original evidence. See Ex. 1 at ¶ 9 ("[d]erivative evidence is any evidence that has been preprocessed by a tool and presented in a review platform"). This is problematic because the defense cannot know or test whether the derivative evidence in the Library is complete and accurate. The government is telling the defense to just "trust them" that it is complete and accurate, but we cannot just take their word for it. We have a constitutional obligation and Mr. Martin has a constitutional right to evaluate the evidence independently.

The Court need not take our experts' words for it. The government itself and its own computer expert from the FBI confirm that the Library is not original evidence and contains data that has been processed, or derived, from the original evidence. In its response, the government

---

[2]     Mr. Dimitrelos' CV is attached as Exhibit 2A.

states at least four times that NSA created the Library by <u>processing</u> the mirror images of the digital media seized from Mr. Martin's home:

- The Library "contains data obtained from copies of the seized media <u>that has been processed for expert forensic review</u> . . . ." Gov't Resp. at 27 (emphasis added);

- "[T]he <u>data from those images [the seized digital media] is processed</u> and accessible through a Library . . . ." <u>Id.</u> at 10 (emphasis added);

- "[I]mages of the seized media required <u>'processing'</u> in order to locate, extract, and render searchable all of the metadata contained on such media." <u>Id.</u> at 24 n.16 (emphasis added);

- "[T]o create the Library, <u>the NSA Lab processed images</u> of the seized digital media . . . ." <u>Id.</u> at 25 (emphasis added).

Even the government's computer expert, David Loveall of the FBI, agrees that the Library contains preprocessed data and not original evidence. Mr. Loveall states in his affidavit: "The Library is a custom interface that provides access to a <u>preprocessed version of data from digital evidence</u>." <u>See</u> Gov't Resp. Ex. 3 at ¶ 12 (Loveall Aff.) (emphasis added).

The defense cannot conduct an independent forensic analysis of derivative evidence. Ex. 1 at ¶ 1; Ex. 2 at ¶ 27. We are entitled to the raw data—here, mirror images—underlying the government's reports.

**B. The Library Is Incomplete.**

The government's assertion that the Library is complete and contains everything the defense needs is wrong.

First, we do not know for sure that the data in the Library is accurate because we cannot trust the untested, unverifiable, government-developed software used to create the Library.

Second, although the Library contains "file metadata," Gov't Resp. at 10, it does not contain everything the defense needs, including "[i]nformation relating to 'unallocated space,' 'data carving,' and 'Microsoft Office metacarving.'" Id. at 22 n.15. Mr. Loveall, the government's FBI expert, agrees. He acknowledges that, while conducting searches of the Library, he was

> unable to access all unallocated space on the digital evidence. This is space on the drive that is not currently associated with any file. As a result, I was not able to perform any carving activities. In some examinations, I would use carving to identify and access deleted files and data that may be of evidentiary value.

See Ex. 2 at ¶ 25 (quoting Loveall Aff. at ¶ 15). Thus, information even the government's expert believes may have "evidentiary value" is unavailable in the Library.

### C. The Defense Is Currently Limited to Searching the Government's Incomplete Work Product.

In its response, the government touts the defense's ability to perform searches of the preprocessed data in the Library using key words. This, as explained by Mr. Daniel and Mr. Dimitrelos, is not independent forensic analysis. See Ex. 1 at ¶ 10 ("The Library is nothing more than a review platform. This means that I can search the government's derivative evidence (work product). But I cannot verify that the derivative evidence is in fact exactly the same thing as the original evidence."); Ex. 2 at ¶ 26 ("Searching the Library, particularly when it is clear that it does not contain all the available digital evidence, is not independent forensic analysis . . . ."). Under these limitations, no computer expert in the world would be able to test whether the Library's data is inaccurate, complete, or filtered.[3]

---

[3] The government devotes many pages of its response to attacking Larry Daniel as unqualified to serve as an expert in this case. This position has no basis (indeed, Mr. Loveall does not dispute Mr. Daniel's qualifications) and, in any event, is a complete red herring. Lucene and Elasticsearch, the programs used to search the Library, are not computer forensic tools. See Ex. 1 at ¶ 13; Ex. 2 at ¶ 7. They are utilized only to review preprocessed data. Ex. 2 at ¶ 7. Because the Library is incomplete (and possibly has been filtered), these searching applications are not capable of viewing 100% of the forensic evidence in this matter or testing whether the information in the Library is complete and accurate. See Ex. 1 at ¶ 13; Ex. 2 at ¶ 7. Even if the defense were

### D. The Library Was Created with Government-Developed Software That Has Not Been Tested or Validated in Accordance with Industry Standards.

There are valid reasons why the defense should be skeptical of the completeness and accuracy of the Library.

The Library was created by custom software developed by the NSA especially for this case. See Gov't Resp. at 25; see also Loveall Aff. at ¶¶ 12-13 ("The Library as a tool is government developed software . . ."). The NSA-developed software processed the mirror images of Mr. Martin's devices and churned out preprocessed data. This government-developed software is not known outside the NSA. It has never been tested or validated in accordance with forensic computer industry standards. The software is unique to this case. Ex. 1 at ¶ 6.

The government-created software used to create the Library has never been used or accepted by the computer forensic community. It stands in contrast to commercially-known software, like FTK (Forensic Tool Kit) or EnCase—which "are well-known forensic software tools, widely accepted, and have been vetted and validated by the computer forensics community." Ex. 1 at ¶ 7. There is no way of knowing whether the software contains hidden bugs or errors.[4] See Ex. 1 at ¶ 8. Thus, our expert, Larry Daniel, has "no way of knowing the reliability of the Library to produce accurate results." Ex. 1 at ¶ 8.

---

to retain an expert in Lucene and Elasticsearch—which the government impliedly conceded is not necessary when it retained Mr. Loveall, a computer forensic analysis who is admittedly not an expert in either application—the defense still would have absolutely no ability to test the government's forensic analysis or conduct our own independent forensic analysis using the Library. In any event, it did not take Mr. Daniel long to familiarize himself with Lucene and Elasticsearch and to determine that expertise in either will not change the fact that they are not computer forensic tools. They cannot be used to conduct an independent forensic analysis.

[4]   In fact, Mr. Loveall's review of the Library revealed at least one error, in that he discovered that the "limit" functionality of the query tool was not functional. See Ex. 1 at ¶ 8.

Another well-qualified computer expert, Mr. Dimitrelos, agrees with Mr. Daniel. The practice of using commercially-available software, such as FTK and EnCase, "has been a standard practice for decades, verifiable and repeatable by the government, defense, and private cyber forensics specialists alike." Ex. 2 at ¶ 14. Unlike FTK and EnCase, however, the Library "has not been similarly tested and validated." Ex. 2 at ¶ 15. The Library, Mr. Dimitrelos continues, "was created by the National Security Agency, and neither Mr. Daniel nor Mr. Loveall possess a copy of the customized open-source version of Elasticsearch and Apache Lucene developed by the government." Ex. 2 at ¶ 15. As a result, it is not possible for Mr. Daniel, Mr. Dimitrelos, or any other forensic examiner retained by the defense to validate "the capabilities and lack of capabilities of the software." Ex. 2 at ¶ 15.

In sum, under the current state of affairs, the defense cannot confirm or test whether the information in the Library is complete and accurate. The government is putting us in the untenable position of "just trusting" that the NSA—the alleged victim in this case—has accurately processed the digital evidence and that the Library, which was created with unknown and untested software, contains no hidden bugs or errors and is completely correct. This violates basic notions of due process.

## II. Mr. Martin Needs Mirror Images of His Computers to Determine Whether Any Allegedly Classified Information Was Found on Them.

In addition to mirror images of the electronic storage devices seized from Mr. Martin, the defense needs mirror images of the computers containing operating systems such as Windows (collectively, "OS devices") seized from his home. Information in the government's response makes this request crucial. According to the government, while it seized at least 18 OS devices from Mr. Martin, "[n]o documents underlying the Indictment were recovered from [those devices]." Gov't Resp. at 9 n.7. This revelation raises many more questions that are highly

7

relevant to Mr. Martin's defense. These questions can only be addressed through a forensic examination of mirror images of the OS devices.

For example, Mr. Martin needs to determine whether other potentially classified materials were saved to his OS devices. If the government intends to claim at trial that Mr. Martin possessed a "sea" of classified information, the defense reserves the right to argue to the jury that not a single classified item was recovered from any of his OS devices. Alternatively, if there is classified information on the OS devices, the defense reserves the right to argue that that information is dwarfed by the amount of unclassified information on the devices and does not suggest knowing possession. We cannot currently make either argument because we do not have access to the OS devices.

### III. Mr. Martin Needs Mirror Images of His Computers to Determine Whether He Ever Opened the Eight Indictment Documents.

As it currently stands, Mr. Martin cannot determine whether or not he ever opened the eight indictment documents (or any other classified documents) using his OS devices. The Library does not contain evidence of whether he opened a file on an OS device. This information can only be found in the mirror images of the OS devices. These mirror images contain computer artifacts, such as shell bags, link files, and jump lists. See Ex. 1 at ¶ 14. These artifacts, in turn, tell computer experts whether or not any of the files on a storage device were ever opened using the OS device. Ex. 1 at ¶ 14. This information has obvious evidentiary value to Mr. Martin's defense. Evidence that Mr. Martin never opened any of the electronically-stored indictment documents (or any other classified documents) using his home computers directly counters the government's narrative that he knowingly possessed those files.

None of this critical information, however, is available in the Library. This information would only be gleaned through a thorough forensic examination of the mirror images of the OS

devices seized from Mr. Martin's residence. The Court should, therefore, order the government to produce mirror images of the OS devices for the defense's review in a secure government facility.[5]

### IV. Mr. Daniel Can Meaningfully and Efficiently Analyze Mirror Images of the Digital Storage Devices Using Commercially-Trusted Tools.

In a last-ditch attempt to oppose the defense's request for mirror images of the digital storage devices, the government makes the unsupported claim that we cannot analyze the devices using commercially-available software. Mr. Daniel and Mr. Dimitrelos routinely handle large amounts of data as part of their practices. As Mr. Daniel notes, he has a current case involving 22 terabytes of data. It took two weeks for him to process that data using FTK. See Ex. 1 at ¶ 11. Likewise, Mr. Dimitrelos estimates based on one of his own cases that it would take approximately two weeks to process the digital evidence in this case. See Ex. 2 at ¶ 13. Processing the evidence will not be an issue, nor will it require an unreasonable amount of time.

The government's claim that the defense cannot meaningfully process the digital evidence using FTK is particularly disingenuous, as the NSA used FTK in developing parts of its forensic reports. As noted in our motion, the NSA included many "visualizations" in its October 9 expert report of where documents were stored in particular devices. See, e.g., Ex. 1C to ECF No. 162 at 24, 52, 70, 73, & 91. Mr. Daniel determined that the NSA created those visualizations—which are not in the Library—using FTK. See Ex. 1 at ¶ 12.

In sum, to test the government's expert forensic reports and conduct our own independent analysis, we need an exact copy of the evidence that the NSA used to conduct its analysis. The

---

[5] The government opposes the defense's request for mirror images of the OS devices, but asks the Court in the alternative to limit the defense's access to the OS devices to pre-processed information saved to the Library. That request should be denied for the same reasons outlined above with regard to the digital storage devices.

Court should order the government to produce mirror images of the digital storage devices used to create the Library.

> **V. The Government's Rolling Expert Disclosures Prevent Us From Effectively Preparing Mr. Martin's Defense, Violate the Court's Scheduling Order, and Jeopardize the Trial Schedule.**

Finally, the defense requests a Court order barring the government from producing or relying on any additional computer forensic analysis that it has not already disclosed in the expert reports dated February 28, 2018, and October 9, 2018. Nearly two months after the expert disclosure deadline set forth in the Court's July 3, 2018 scheduling Order, and despite the Court's repeated admonishments against "rolling" discovery productions, see Aug. 17, 2018, Hr'g Tr. at 65:2-4, 72:17-19, the government supplemented its 16-page February 28, 2018, forensic report with a 104-page forensic report provided on October 9, 2018. The government's response provides no assurances that it intends to abide by the Court's scheduling orders in the future. To the contrary, the government suggests that it can continue providing supplemental "details" to its expert disclosure without limit. See Gov't Resp. at 20 ("There is no requirement that expert notice provide all details of an expert's anticipated testimony."). The government's position not only jeopardizes the trial schedule, but is also completely unreasonable in light of the more than two years it has had to examine the evidence and conduct its forensic analysis. The defense must be afforded appropriate time to test and rebut the government's analysis. The Court should not tolerate any future violations of its scheduling Order.

## CONCLUSION

The government has opted to make expert computer forensic analysis a significant part of its case. Having done so, the government has made the digital evidence relevant and helpful to Mr. Martin's defense. The government need not rely on computer forensic analysis at trial, but if

10

it does so, the defense must be provided the ability to test that analysis and conduct our own independent forensic examination of the digital evidence. To do so, we need mirror images. For the reasons stated above, the Court should order the government to produce (1) mirror images of the digital storage devices used to create the Library and (2) mirror images of the computers containing operating systems seized from Mr. Martin's residence. The Court should also bar the government from relying on any computer forensic analysis that it has not already disclosed in the reports dated February 28, 2018, and October 9, 2018.

        Respectfully submitted,

        /s/

        _____
        JAMES WYDA, #25298
        Federal Public Defender

        DEBORAH L. BOARDMAN, #28655
        First Assistant Federal Public Defender

        SHARI SILVER DERROW, #19181
        Assistant Federal Public Defender
        Office of the Federal Public Defender
        100 South Charles Street, Tower II, 9th Floor
        Baltimore, Maryland 21201
        Phone: 410-962-3962
        Fax: 410-962-0872
        Email: jim_wyda@fd.org
               deborah_boardman@fd.org
               shari_derrow@fd.org