


**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

| | | |
|---|---|---|
| Harvey Ellis Eisenberg<br>Assistant United States Attorney<br>Chief, National Security Section<br>Coordinator, Anti-Terrorism Advisory Council<br>Harvey.Eisenberg@usdoj.gov | Suite 400<br>36 S. Charles Street<br>Baltimore, MD 21201-3119 | DIRECT: 410-209-4843<br>MAIN: 410-209-4800<br>FAX: 410-962-9293 |

March 11, 2019

James Wyda, Esq.
Deborah L. Boardman, Esq.
Shari Derrow, Esq.
Office of the Federal Public Defender
100 S Charles St., Ste. 900
Baltimore, MD 21201

    Re:    United States v. Harold T. Martin, III
             Criminal No. RDB-17-0069

Dear Counsel:

    This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Harold T. Martin, III, (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **5:00 p.m. Sunday March 17, 2019**, it will be deemed withdrawn. **The Agreement calls for a sentence of nine years' imprisonment. It is entered into and will be submitted to the Court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).** The terms of the Agreement are as follows:

Offense of Conviction

    1.    The Defendant agrees to plead guilty to Count One of the Indictment, which charges the Defendant with Willful Retention of National Defense Information, in violation of 18 U.S.C. § 793(e). The Defendant admits that the Defendant is, in fact, guilty of the offense(s) and will so advise the Court.

Rev. August 2018

## Elements of the Offense(s)

2. The elements of the offense(s) to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Indictment, in the District of Maryland, the Defendant:

    a. had possession of or control over a document containing information relating to the national defense;

    b. was not authorized to possess the document;

    c. retained the document and failed to deliver the document to an officer or employee of the United States entitled to receive it; and

    d. acted willfully.

## Penalties

3. The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| One | 18 U.S.C. § 793(e) | None | 10 years | 3 years | $250,000 | $100 |

    a. **Prison:** If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

    b. **Supervised Release:** If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

    c. **Restitution:** The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

    d. **Payment:** If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

    e. **Forfeiture:** The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

    f. **Collection of Debts:** If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is

Rev. August 2018

nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

<u>Waiver of Rights</u>

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

  f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

  g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

  h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

  a. **Base Offense Level:** This Office and the Defendant further agree that the applicable base offense level for the offense of conviction and its relevant conduct is **twenty-nine (29)** pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2M3.3(a)(1) because the Defendant willfully retained national defense information that was classified at the TOP SECRET//SENSITIVE COMPARTMENTED INFORMATION ("SCI") level.

  b. **Abuse of Position of Trust or Use of Special Skill:** Pursuant to U.S.S.G. § 3B1.3, there is a **two (2) level increase** because the Defendant abused a position of public trust and used a special skill in a manner that significantly facilitated the commission and concealment of the offense.

  c. **Acceptance of Responsibility:** This Office does not oppose a **2-level reduction** in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's clear demonstration of his acceptance of responsibility for his offense. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

  d. **Final Adjusted Offense Level:** Thus, the parties agree that, should the Defendant receive the anticipated two-level reduction for acceptance of responsibility, the final adjusted offense level will be **level 29.**

  7. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

  8. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

### Rule 11 (c)(1)(C) Plea

  9. The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a total sentence of **9 years' imprisonment (108 months), in the custody of the Bureau of Prisons, followed by three years of supervised release,** is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the Court's discretion to impose any lawful fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

Rev. August 2018

## Obligations of the Parties

10. This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment as well as the impact of his conduct on the U.S. Government, including but not limited to the specific harms caused not only by the unlawful retention of the documents referenced in the Indictment, but also by the government's expenditure and diversion of resources to investigate the totality of information the Defendant retained without authorization. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

11. **Limitation of Further Prosecution:** If this agreement is accepted by the Court, this Office agrees not to bring any further charges against the Defendant arising from U.S. government property seized from his residence (including surrounding property), vehicle, and person on August 27 and 31, 2016. This Office further agrees not to bring any further charges against the Defendant arising from U.S. government property that was contained in the Defendant's electronic communications accounts and that was provided in the course of discovery to the defense in this case.

12. **Lifetime Obligation to Protect Classified and National Defense Information:** The Defendant understands and agrees that he has a continuing legal obligation to refrain from the unauthorized oral or written disclosure of classified information, or information relating to the national defense. The Defendant understands and agrees that he shall not disclose, communicate, transmit, or disseminate in any way any classified information, or information relating to the national defense. The Defendant understands and agrees that the law absolutely forbids him from disclosing, communicating, transmitting, or disseminating any classified information, or information relating to the national defense, without regard to where, when, or how he learned of or came into possession of the classified information or information relating to the national defense. The Defendant further understands and agrees that he is absolutely prohibited from disclosing, communicating, transmitting, or disseminating any classified information, or information relating to the national defense, even if that information can be found in a book, on the Internet, or in any other source that is publicly available or not. The Defendant understands and agrees that merely because classified information, or information relating to the national defense, may have appeared publically does not render that information unclassified. The Defendant further understands and agrees that he is prohibited from confirming or expanding upon classification status, technical accuracy, or potential uses for any classified information, or national defense information, that may appear in any public or non-public source. This agreement does not in any way reduce the Defendant's existing obligations not to disclose classified information or other U.S. Government information he learned or received in the course of his employment.

13. **No Unauthorized Communications Regarding the Defendant's Work for the United States Government:** The Defendant understands and agrees that he remains bound by all non-disclosure and security agreements he has executed regarding classified information and Sensitive Compartmented Information (SCI) as a contractor for or employee of the United States government.

14. **Assignment of Compensation for Certain Publications:** The Defendant hereby assigns to the United States any compensation, profits, proceeds, fee, honorarium, money, or payment of any kind (collectively "compensation") that he may otherwise be entitled to receive in connection with any publication or dissemination of information relating to his work as a contractor for or employee of the United States Government, and the facts and circumstances of the investigation of his activities, or his prosecution, or sentencing in this matter. This assignment includes, but is not limited to, any compensation provided to the Defendant in connection with any such book, writing, electronic communication, computer code, article, film, documentary, or other production. This assignment includes all compensation for the benefit of the Defendant, regardless of whether such compensation is payable to him or others, directly or indirectly, for his benefit, or the benefit of his associates or a current, former, or future member of his family. The Defendant shall not circumvent this assignment by assigning the rights to his story to an associate or to a current, former, or future member of his family, or to another person or entity who would provide some financial benefit to him, to his associates, or to a current, former, or future member of his family. Moreover, he shall not circumvent this assignment by communicating with an associate or family member for the purpose of assisting or facilitation their profiting from a public or private dissemination, whether or not such an associate or other family member is personally or directly involved in such dissemination.

15. **Manner of Seeking Authorization for Communications:** The Defendant understands and agrees that any requests for permission to engage in communications described in the above paragraphs must be made in writing to the relevant agencies or components of the United States Government for instructions on how to submit a request, and then must submit any such request pursuant to those instructions. No agency or component of the United States Government is required to grant such permission to the Defendant, and the manner and timeliness of the review of any such request by him is at the sole discretion of the relevant agencies or components of the United States Government.

16. **No Contact with Foreign Agents:** The Defendant understands and agrees that he shall not knowingly have contact with any foreign government, or agents thereof, except with the express written permission of the FBI, unless such contact is solely for the purpose of obtaining a visa for foreign travel, entering and departing a foreign country through customs control, or otherwise related to lawful international travel. The Defendant shall not seek or knowingly accept, personally or through another person or entity, any benefit from any foreign government or agent thereof. Should such a benefit be received by the Defendant, or some person or entity on his behalf, he hereby assigns any such benefit to the United States.

17. **Waiver of Discovery:** As part of this plea agreement, and based upon the concessions of the United States in this plea agreement, the Defendant knowingly, willingly, and voluntarily gives up the right to seek any additional discovery. Further, the Defendant knowingly, willingly, and voluntarily waives all pending requests for discovery.

18. **Return of Discovery:** The Defendant understands and agrees that no later than 30 days following his sentencing hearing he will, through his attorneys, return to the United States all discovery provided by the United States in this case, with the following exceptions: (A) this Office will allow the Defendant to retain copies of unclassified hard-copy documents relating to his finances that were produced in discovery; (B) any additional unclassified materials this Office

Rev. August 2018

gives the Defendant express, written permission to retain. The Government reserves the right to inspect the specific documents the Defendant wishes to retain to determine whether they are classified or otherwise must be returned to the Government. Except for materials the Government permits the Defendant to retain, the Defendant expressly consents to the United States destroying or retaining these items as it sees fit without notice to him.

### Waiver of Appeal

19. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives all rights, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

   b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

      i. The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

      ii. This Office reserves the right to appeal any sentence below a statutory minimum.

   c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Forfeiture

20. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

21. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used

Rev. August 2018

to facilitate the commission of, the Defendant's illegal activities: all papers, digital media, and electronic devices seized from his residence, vehicle, and person on or about August 27 and 31, 2016.

22. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

23. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

24. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Defendant's Conduct Prior to Sentencing and Breach

25. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

26. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither

Rev. August 2018

the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

27. The Court is not a party to this Agreement. The Court has the sole discretion to decide whether to accept the parties' agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C). The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. Should the Court reject the parties' recommended sentencing range, and the Defendant choose not to withdraw his plea of guilty, the Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

28. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

_____
Harvey E. Eisenberg
Assistant United States Attorney
Chief, National Security Section

_____
Zachary A. Myers
Assistant United States Attorney

_____
David Aaron
Trial Attorney
U.S. Department of Justice
National Security Division

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

17/MARCH/19                         _____
Date                                 Harold T. Martin, III

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

3/17/19                              _____
Date                                 James Wyda, Esq.
                                     Deborah L. Boardman, Esq.
                                     Shari Derrow, Esq.

Rev. August 2018

## ATTACHMENT A
## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

### The Defendant's Background and Employment

The Defendant, Harold T. Martin, III, 52, is a former resident of Glen Burnie, Maryland. From July 1988 through July 1992, Martin served on active duty in the United States Navy. Martin held a SECRET security clearance in connection with his active duty service. From August 1992 through March 2000, Martin served in the United States Naval Reserve. In August 1994, Martin's security clearance in connection with his Navy service was upgraded to TOP SECRET.

Beginning in December 1993, and continuing until August 29, 2016, Martin was employed by at least seven different private companies and was assigned as a contractor to components of the U.S. Department of Defense (DoD) and the United States Intelligence Community (USIC) (collectively, the "government agencies"). Martin was required to receive and maintain a security clearance in order to work at each of the government agencies to which he was assigned. As a private contractor, Martin held security clearances up to TOP SECRET//SENSITIVE COMPARTMENTED INFORMATION (SCI) at various times.

### The Defendant's Access to Classified Information

Martin's access to classified information was based in part upon his agreement to follow the laws, regulations, and government policies regarding the handling, marking, transportation, and storage of classified materials. Over his many years holding a security clearance, Martin signed numerous agreements with the U.S. Government agreeing to abide by these conditions. Martin regularly received training regarding classified information, including the definitions of classified information, the levels of classification, and SCI, as well as the proper handling, marking, transportation, and storage of classified materials. Martin received training on his duty to protect classified materials from unauthorized disclosure, which included complying with handling, transportation, and storage requirements. Martin knew that unauthorized removal of classified materials and transportation and storage of those materials in unauthorized locations risked disclosure of those materials, and therefore could endanger the national security of the United States and the safety of its citizens.

In particular, Martin was advised repeatedly that unauthorized disclosure of TOP SECRET information reasonably could be expected to cause exceptionally grave damage to the national security of the United States, and that violation of rules governing the handling of classified information could result in criminal prosecution. Training presentations and materials specifically warned Martin that he was prohibited from retaining classified information at his home or in his vehicle.

Classified information relating to the national defense is closely held and maintained under specific security conditions. Because of his work responsibilities and security clearance, Martin was able to access classified national defense information in secure locations and computer systems. Beginning in approximately the late 1990s, Martin stole from such secure locations classified paper and digital documents containing information relating to the national defense and retained those documents in his residence (including surrounding property), on his person, and in his vehicle.

## The Defendant's Willful and Unlawful Retention of National Defense Information

Beginning in the late 1990s and continuing through August 31, 2016, Martin possessed in his residence and vehicle, both located in Glen Burnie, Maryland, a vast quantity of documents and other information bearing standard classification markings, in both hard copy and digital form (stored on multiple electronic storage media), that he stole from his workplaces.

On August 27, 2016, during the execution of search warrants at his home, Martin voluntarily agreed to be interviewed by investigators. During the interview, Martin at first denied, and later, when confronted with specific documents, admitted he took documents and digital files from his workplaces to his residence and vehicle that he knew were classified. Martin stated that he knew he did not have authorization to retain the materials at his residence or in his vehicle. Martin stated that he knew what he had done was wrong and that he should not have done it because he knew it was unauthorized.

The documents and digital files Martin stole from his workplaces and retained without authorization at his residence spanned two decades, related to many subject matter areas, and included information from many U.S. government agencies. The large volume of hard-copy and digital materials included information from the National Security Agency (NSA), U.S. Cyber Command (USCYBERCOM), the National Reconnaissance Office (NRO), and the Central Intelligence Agency (CIA). In particular, the classified documents Martin possessed included:

**Document A:** A March 2014 NSA leadership briefing outlining the development and future plans for a specific NSA organization.

**Document B.** A 2014 NSA report outlining intelligence information regarding foreign cyber issues, containing targeting information.

**Document C:** A 2014 NSA report outlining intelligence information regarding foreign cyber issues, containing foreign cyber intrusion techniques.

**Document D:** A 2009 draft of a United States Signals Intelligence Directive, which outlined specific methods, capabilities, techniques, processes, and procedures associated with Computer Network Operations (CNO) used to defend the United States.

**Document E:** February 2008 NSA email correspondence containing an NSA intelligence assessment about an overseas project, containing information directly related to a subject that implicated national security policies and responses.

**Document F:** A February 2007 Daily Operations Briefing concerning the daily operations of NSA activities, which identified specific NSA capabilities and operations.

**Document G:** An NSA anti-terrorism operational document concerning extremely sensitive U.S. planning and operations regarding global terrorists.

**Document H:** 2002 NSA email correspondence and NSA intelligence information regarding extremist activity, which identified targets of intelligence collection.

**Document I:** An August 1996 NSA weekly status summary of national defense concerns emanating from various parts of the world.

**Document J:** An NSA Threat Operations Center (NTOC) progress report that specifically described activities, capabilities, techniques, process, and procedures associated with NTOC, which discovers, characterizes, and proactively counters threats to U.S. national security systems and other networks of interest.

**Document K:** An outline of a classified exercise involving real-world NSA and U.S. military resources to demonstrate existing cyber intelligence and operational capabilities.

**Document L:** An NSA User's Guide for an NSA intelligence-gathering tool.

**Document M:** A description of the technical architecture of an NSA communications system.

**Document N:** A USCYBERCOM document, dated August 17, 2016, discussing capabilities and gaps in capabilities of the U.S. military and details of specific operations.

**Document O:** A USCYBERCOM document, dated August 12, 2016, discussing capabilities and gaps in capabilities of the U.S. military and details of specific operations.

**Document P:** A USCYBERCOM document, dated June 9, 2016, containing information about the capabilities and targets of the U.S. military.

**Document Q:** A USCYBERCOM document, dated May 23, 2016, containing information about the capabilities and targets of the U.S. military.

**Document R:** A USCYBERCOM document, dated August 9, 2007, discussing intelligence sources and method, and the U.S. military's role in a planned counterterrorism operation.

**Document S:** An NRO document, dated August 17, 2007, containing information relating to the launch of an intelligence collection satellite, an unacknowledged ground station, and other specific intelligence collection technologies and programs.

**Document T:** A 2008 CIA document containing information relating to foreign intelligence collection sources and methods, and relating to a foreign intelligence collection target.

These twenty documents are classified and closely held by the government. The information contained within these documents and materials relate to United States military and naval establishments and related activities of national preparedness, as well as the defense of the United States against its enemies. Possession of this information outside of authorized secure facilities and channels puts the United States at risk. The unauthorized disclosure of this information is potentially damaging to the United States and such information would be highly useful to its enemies.

Martin was aware that the documents he retained were classified and contained national defense information and that retaining them in his residence and vehicle put the information and national security at risk. Martin's residence and vehicle were not locations authorized to store classified information. Martin knew that they were not authorized locations for such storage and, having unauthorized possession of the documents listed above relating to the national defense, willfully retained those documents and failed to deliver them to an officer or employee of the United States entitled to receive them.

SO STIPULATED:

_____
Harvey E. Eisenberg
Assistant United States Attorney
Chief, National Security Section

_____
Zachary A. Myers
Assistant United States Attorney

_____
David Aaron
Trial Attorney
U.S. Department of Justice
National Security Division

_____
Harold T. Martin, III
Defendant

_____
James Wyda, Esq.
Deborah L. Boardman, Esq.
Shari Derrow, Esq.
Counsel for Defendant